MARTHA VINCENT *v.* CITY OF NEW HAVEN ET AL.
(SC 17661)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued November 27, 2006—officially released March 11, 2008

*Jason M. Dodge*, for the appellants (defendants).

*Thomas A. Weaver*, for the appellee (plaintiff).

*Nathan Julian Shafner* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

PALMER, J. The sole issue raised by this workers' compensation appeal is whether the surviving dependent of an employee who, prior to the employee's death, was entitled to health insurance coverage, also is entitled to health insurance coverage following the employee's death. The named defendant, the city of New Haven (city),[1] denied the plaintiff, Martha Vincent, health insurance coverage after her husband, Edwin Vincent (decedent), died of a work-related injury to his heart. The plaintiff contested the city's denial of coverage, claiming that, because she had been entitled to and was receiving health insurance coverage at the city's expense prior to the decedent's death pursuant to General Statutes (Rev. to 1989) § 31-284b,[2] she also was entitled to such coverage after the decedent's death. The workers' compensation commissioner for the third district (commissioner) agreed with the plaintiff that, under General Statutes (Rev. to 1989) §§ 7-433c[3] and

[1] Connecticut Interlocal Risk Management Agency, the city's heart and hypertension administrator, also is a defendant. In the interest of simplicity, we refer only to the city throughout this opinion.

[2] General Statutes (Rev. to 1989) § 31-284b provides in relevant part: "(a) In order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries, any employer . . . who provides accident and health insurance or life insurance coverage for any employee or makes payments or contributions at the regular hourly or weekly rate for full-time employees to an employee welfare fund . . . shall provide to such employee equivalent insurance coverage or welfare fund payments or contributions while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter, or while the employee is receiving wages under a provision for sick leave payments for time lost due to an employment-related injury. . . ."

Hereinafter, all references to § 31-284b are to the 1989 revision unless otherwise provided.

[3] General Statutes (Rev. to 1989) § 7-433c provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty

31-306,[4] the city was required to provide her with the

any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

Hereinafter, all references to § 7-433c are to the 1989 revision.

[4] General Statutes (Rev. to 1989) § 31-306 provides in relevant part: "(b) Compensation shall be paid on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease as follows:

"(1) There shall be paid the sum of four thousand dollars for burial expenses. If there is no one wholly or partially dependent upon the deceased employee, the burial expenses of four thousand dollars shall be paid to the person who assumes the responsibility of paying the funeral expenses.

"(2) To those wholly dependent upon the deceased employee at the time of his injury, a weekly compensation equal to sixty-six and two-thirds per cent of the average weekly earnings of the deceased at the time of injury but in no case more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred or less than twenty dollars weekly. In the case of an occupational disease, the time of injury shall be the date of total or partial incapacity to work as a result of such disease. (A) The weekly compensation rate of each dependent entitled to receive benefits under this section as a result of death arising from a compensable injury occurring on or after October 1, 1977, shall be adjusted annually

same health insurance coverage to which she had been entitled prior to the decedent's death.[5] The workers' compensation review board (board) affirmed the commissioner's decision, and the city appealed.[6] We conclude that the plaintiff is not entitled to health insurance benefits under § 31-306, and, therefore, we reverse the decision of the board.

The relevant facts and procedural history are undisputed. The decedent was employed by the city as a police officer. On October 10, 1990, the decedent suffered an injury to his heart[7] and filed a claim for benefits under § 7-433c. The city accepted the claim and, in

as provided herein as of the following October first, and each subsequent October first, to provide such dependent with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of the injury under section 31-309. If the maximum weekly compensation rate as determined under the provisions of section 31-309, to be effective as of any October first following the date of injury, is greater than the maximum weekly compensation rate prevailing at the time of injury, the weekly compensation rate which the injured employee was entitled to receive at the time of the injury shall be increased by the dollar amount of the increase in the maximum weekly compensation rate required by the provisions of section 31-309 from the date of injury to such October first. Such cost-of-living increases shall be paid by the employer without any order or award from the commissioner. Such adjustments shall apply to each such payment made in the next succeeding twelve-month period commencing with the October first next succeeding the date of injury. . . .

"(3) If the surviving spouse is the sole presumptive dependent, compensation shall be paid until death or remarriage if such should occur. . . ."

Hereinafter, all references to § 31-306 are to the 1989 revision.

[5] We note that the plaintiff's right to survivor's benefits arises under § 7-433c, commonly known as the Heart and Hypertension Act, but the benefits to which the plaintiff became entitled upon the decedent's death are set forth in § 31-306. See *Genesky* v. *East Lyme*, 275 Conn. 246, 252 n.9, 881 A.2d 114 (2005) ("[a]lthough an award of benefits under § 7-433c is not a workers' compensation award, the Workers' Compensation Act is used as a procedural avenue for the administration of benefits under § 7-433c" [internal quotation marks omitted]).

[6] The city appealed from the decision of the board to the Appellate Court pursuant to General Statutes § 31-301b, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[7] The record does not reveal the nature of the decedent's injury to his heart.

accordance with the requirements of § 31-284b, provided the decedent and the plaintiff with group health insurance coverage.

On September 3, 1991, the decedent died as a result of his heart injury. The plaintiff, the decedent's sole dependent, entered into an agreement with the city pursuant to which the city accepted the plaintiff's claim for survivor's benefits under § 31-306. The city, however, contested liability for continuing health insurance coverage, claiming that, under the plain language of § 31-306, an employer is not required to provide health insurance coverage to the surviving dependent of a deceased employee. Concluding that he was bound by prior precedent of the board; see *Weymouth* v. *Police Dept.*, No. 4550, CRB-1-02-7 (April 3, 2003) (holding that § 31-306 applies to surviving dependents of deceased employees); *Sansone* v. *Enfield*, No. 3885, CRB-01-98-9 (November 18, 1999) (same); the commissioner ruled in favor of the plaintiff. The city appealed from the decision of the commissioner to the board, which affirmed the commissioner's ruling.

On appeal from the decision of the board, the city maintains that its obligation under § 31-284b to provide the plaintiff with health insurance coverage terminated upon the decedent's death because § 31-306 plainly and unambiguously limits a surviving dependent's benefits to burial expenses and weekly compensation calculated as a percentage of the deceased employee's earnings. We agree with the city.

We note preliminarily that the issue raised in this appeal, namely, whether the plaintiff is entitled to continued health insurance coverage under § 31-306 following the death of the decedent, "is one of statutory construction. . . . Because the relevant aspects of this statute have been subjected neither to previous judicial scrutiny nor to a time-tested interpretation by the board,

we afford no special deference to the conclusion of the board.[8] . . . Instead, we exercise the plenary review [that] we otherwise apply to such questions of law. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually

---

[8] This court repeatedly has observed that an agency's reasonable interpretation of an ambiguous statute is entitled to deference only when that interpretation has been subjected to judicial review or the agency interpretation is both reasonable and time-tested. See, e.g., *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 163–66, 931 A.2d 890 (2007). It is undisputed that whether § 31-306 entitles a surviving dependent to continued health insurance coverage is an issue that previously has not been the subject of judicial review. Although it is true that, since its decision in *Sansone* v. *Enfield*, supra, No. 3885, the board has interpreted § 31-306 as requiring an employer to provide continued health insurance coverage to the surviving dependent of a deceased employee, *Sansone* was not decided until 1999. To satisfy the time-tested requirement of the rule according deference to an agency's interpretation of a statute, that interpretation must formally have been articulated and applied "over a long period of time . . . ." *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 719, 546 A.2d 830 (1988); see also *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 262, 788 A.2d 60 (2002) (deference accorded agency's reasonable interpretation of statute only when agency has followed that interpretation "for an extended period of time"). Because *Sansone* is a relatively recent decision, we cannot say that the board's interpretation of § 31-306 is sufficiently long-standing to warrant judicial deference, especially in view of the fact that the board has applied this interpretation only in two previous cases. See *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 603 n.9, 893 A.2d 431 (2006) (two "isolated" agency decisions over twenty-three year period is not "a time-tested interpretation"); cf. *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 390 n.18, 709 A.2d 1116 (1998) (observing that agency interpretation of "[f]our years hardly constitutes a 'time-tested' agency interpretation"). Moreover, because we conclude that the statute is not ambiguous, the board's interpretation would not prevail in any event. See *State Medical Society* v. *Board of Examiners in Podiatry*, supra, 719 (rule of deference applies only when agency "has consistently followed its construction over a long period of time, *the statutory language is ambiguous*, and the agency's interpretation is reasonable" [emphasis added]).

does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z[9] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . .

"Moreover, [i]n applying these general principles, we are mindful that the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.] indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Citations omitted; internal quotation marks omitted.) *Pizzuto* v. *Commissioner of Mental Retardation*, 283 Conn. 257, 264–65, 927 A.2d 811 (2007). With these principles in mind, we turn to the relevant statutory language.

---

[9] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

Under General Statutes (Rev. to 1989) § 31-306 (b), "[c]ompensation shall be paid [to dependents] on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease *as follows*: (1) . . . four thousand dollars for burial expenses . . . [and] (2) [t]o those wholly dependent upon the deceased employee at the time of his injury, a weekly compensation equal to sixty-six and two-thirds per cent of the average weekly earnings of the deceased at the time of injury . . . ." (Emphasis added.) These two payments—a payment for burial expenses and a weekly payment based on a percentage of the deceased employee's average weekly earnings—represent the only compensation to which a surviving dependent is entitled under the express language of § 31-306. The statute makes no mention of an entitlement to any other benefits, including health insurance coverage.

The plaintiff nevertheless claims that § 31-306 is ambiguous and that the ambiguity must be resolved in her favor in light of the beneficent purposes of the act. The plaintiff relies on two separate but related arguments to support her claim of ambiguity. First, the plaintiff refers to General Statutes § 31-275 (4),[10] which

[10] General Statutes § 31-275 provides in relevant part: "As used in [the act], unless the context otherwise provides:

* * *

"(4) 'Compensation' means benefits or payments mandated by the provisions of [the act], including, but not limited to, indemnity, medical and surgical aid or hospital and nursing service required under section 31-294d and any type of payment for disability, whether for total or partial disability of a permanent or temporary nature, death benefit, funeral expense, payments made under the provisions of section 31-284b, 31-293a or 31-310, or any adjustment in benefits or payments required by [the act]. . . ."

We note that the legislature did not define the term "compensation" for purposes of the act until 1991; see Public Acts 1991, No. 91-32, § 1; and that the present case implicates the 1989 revision of the applicable statutory provisions based on the decedent's date of injury. As this court previously has explained, however, the legislature, in defining the term "compensation" in § 31-275 (4) "merely clarified the term as it had already been used through-

defines " '[c]ompensation' " for purposes of the act as "benefits or payments mandated by the provisions of [the act], including, but not limited to . . . payments made under the provisions of section 31-284b . . . ." The plaintiff contends that, because "payments made under the provisions of [§] 31-284b" include health insurance benefits for dependents; see *Tufaro* v. *Pepperidge Farm, Inc.*, 24 Conn. App. 234, 239, 587 A.2d 1044 (1991) (§ 31-284b includes benefits for dependents); the legislature's use of the word "compensation" in § 31-306 reasonably may be interpreted as signifying an intent to include health insurance benefits within the purview of that statutory provision. Second, the plaintiff relies on General Statutes (Rev. to 1989) § 31-284b (a), which provides that an employer who provides health insurance coverage to its employees must continue to provide such coverage to injured employees "[i]n order to maintain, as nearly as possible, the income of employees who suffer employment-related injuries . . . ."[11] In essence, the plaintiff maintains that it is reasonable to read the remedial purpose of § 31-284b, which refers only to *employees*, into § 31-306, which refers only to *surviving dependents* of employees, and that doing so imports ambiguity into § 31-306. As the

out the act and did not enact any substantive change in the law." *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 347, 612 A.2d 1203 (1992).

[11] For purposes of General Statutes § 31-284b (a), " 'income' means all forms of remuneration to an individual from his employment, including wages, accident and health insurance coverage, life insurance coverage and employee welfare plan contributions and 'employee welfare plan' means any plan established or maintained for employees or their families or dependents, or for both, for medical, surgical or hospital care benefits."

Although the definition of "income" was added to § 31-284b (a) in 1991; see Public Acts 1991, No. 91-32, § 8 (P.A. 91-32); and the present case implicates the 1989 revision of the applicable statutory provisions; see footnote 10 of this opinion; the legislative history of the public act that incorporated this definition suggests that it merely clarified the meaning of the term as it previously had been used in the act. See *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 346–47, 612 A.2d 1203 (1992) (citing legislative history of P.A. 91-32).

plaintiff notes, since the board's decision in *Sansone*,[12] the board has relied on this rationale in concluding that "the ambiguous interplay" of these statutory provisions "should be construed to allow the [surviving dependent] to receive . . . health insurance coverage as part of her survivor's benefits." (Internal quotation marks omitted.) *Vincent* v. *New Haven*, No. 4919, CRB-3-05-1 (January 13, 2006), quoting *Sansone* v. *Enfield*, supra, No. 3885. We conclude that neither § 31-275 nor § 31-284b supports the plaintiff's claim that § 31-306 reasonably may be construed to require an employer to provide health insurance coverage to a surviving dependent of a deceased employee.

First, we reject the plaintiff's contention that § 31-275 (4), which defines "compensation" to include health insurance coverage, affords a basis for concluding that § 31-306 requires the city to continue to provide the plaintiff with such coverage following the death of the decedent. General Statutes § 31-275 expressly provides that its definition of compensation shall apply throughout the act "unless the context otherwise provides . . . ." "By adding the phrase 'unless the context otherwise provides,' the legislature recognized that in some cases the circumstances under which the statute is being applied control the meaning of the term 'compensation.'" *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 352, 612 A.2d 1203 (1992) (*Covello, J.*, dissenting). Section 31-306 presents one such example: for purposes of that section, the term "compensation" is expressly limited to payments for burial expenses and weekly payments that represent a percentage of the deceased employee's average weekly earnings. To construe § 31-306 otherwise would require us to ignore the express statutory directive regarding the specific compensation

[12] We note that Jesse M. Frankl, then chairman of the workers' compensation commission, dissented from the majority opinion of the board in *Sansone.*

to be paid under that provision. See *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 101, 653 A.2d 782 (1995) ("[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive" [internal quotation marks omitted]). Indeed, when the legislature intends for a list to be illustrative rather than exhaustive, it knows how to express that intent.[13] See, e.g., General Statutes § 31-284b (a) (defining " 'income' " as "all forms of remuneration . . . *including* wages" [emphasis added]); General Statutes § 31-275 (4) (defining " '[c]ompensation' " as "benefits or payments mandated by the provisions of [the act], *including, but not limited to*, indemnity, medical and surgical aid" [emphasis added]).

We also disagree with the plaintiff that § 31-306 is ambiguous in light of § 31-284b, which provides that an injured employee who is receiving compensation under the act is entitled to the same health insurance benefits

---

[13] We reject the plaintiff's claim that this court's decision in *Cappellino* v. *Cheshire*, 226 Conn. 569, 628 A.2d 595 (1993), is inconsistent with the conclusion that the benefits enumerated in § 31-306 are exclusive. In *Cappellino*, we held that the surviving dependent spouse was entitled to receive the unpaid balance of certain permanent partial disability benefits that had been awarded to her husband prior to his death from a cause unrelated to his employment. Id., 571–72, 574. *Cappellino* is distinguishable from the present case because it did not involve surviving dependent benefits under § 31-306. More importantly, in *Cappellino*, we concluded that the surviving spouse was entitled to her husband's unpaid disability benefits, despite the absence of any provision expressly mandating the payment of those benefits to a surviving dependent, because, under General Statutes (Rev. to 1993) § 31-302, "permanent partial disability awards may be commuted into lump sums and placed in trust for the benefit of the employee and his or her dependents." Id., 575–76. We reasoned that, "[i]f, upon commutation, the right of survivorship in the award . . . would pass to dependents, it would be a wholly unreasonable construction of the [a]ct to hold that if commutation were not made, survivorship would not pass to the dependents." (Internal quotation marks omitted.) Id., 576. In light of the different statutory provisions at issue in *Cappellino*, our decision and analysis in that case have no bearing on our resolution of the present appeal.

to which he was entitled prior to the injury. The plaintiff claims that the legislature's *reason* for that requirement, that is, "to maintain, as nearly as possible, the income of employees who suffer employment-related injuries"; General Statutes (Rev. to 1989) § 31-284b (a); applies with equal force to the surviving dependents of deceased employees, and, therefore, § 31-306 should be construed to include the continued health coverage that is required under § 31-284b (a).

The plaintiff's contention, however, is contrary to the straightforward language of both of those statutory provisions. Section 31-284b provides that an employer shall continue to "provide to [the] *employee* equivalent insurance coverage . . . while the *employee* is eligible to receive or is receiving . . . compensation . . . ." (Emphasis added.) General Statutes (Rev. to 1989) § 31-284b (a); see *Kelly* v. *Bridgeport*, 61 Conn. App. 9, 16–17, 762 A.2d 480 (2000) (§ 31-284b requires employer "to continue insurance benefits only while an employee is receiving 'compensation payments' for disability under the [act]"), cert. denied, 255 Conn. 933, 767 A.2d 104 (2001). Thus, § 31-284b (a) refers only to "employees" and contains no reference either to deceased employees or to their surviving dependents.[14] Although § 31-306

---

[14] The plaintiff contends that *Tufaro* v. *Pepperidge Farm, Inc.*, supra, 24 Conn. App. 234, supports her claim that she is entitled to health insurance benefits notwithstanding that the relevant statutory provisions contain no reference to dependents of employees. In *Tufaro*, the Appellate Court concluded that, under General Statutes (Rev. to 1991) § 31-284b, which is identical to the version of § 31-284b applicable in the present case, i.e., the revision of 1989, an employer must continue to provide insurance not only to the injured employee but also to that employee's dependents, even though § 31-284b refers only to employees. *Tufaro* v. *Pepperidge Farm, Inc.*, supra, 239. The court's conclusion was predicated on the fact that the express "objective of [§ 31-284b] is to maintain all forms of an employee's income"; id.; and that, under General Statutes § 31-284b (a), " 'income' " is defined as "all forms of remuneration," including health insurance coverage and contributions to an employee welfare plan "established or maintained for employees or their families or dependents . . . for medical . . . benefits." *Tufaro* is inapposite to the present case because the employee in *Tufaro* clearly fell within the purview of General Statutes (Rev. to 1991) § 31-284b, and the task of the Appellate Court was to determine, in light of the ambiguous statutory

does pertain to the surviving dependents of deceased employees, it does not mention or refer to health insurance. The plaintiff's claim, therefore, derives no support from the statutory language on which that claim is predicated.[15]

The plaintiff contends that construing § 31-306 to deny her the right to continued health insurance following the decedent's death leads to a harsh result that is

language, whether payments for dependent's benefits constituted "income" of an employee under that statute. The decedent in the present case, however, is not an employee within the meaning of § 31-284b, and, therefore, the ambiguity that the court in *Tufaro* resolved in favor of the employee is not relevant to the present case. More fundamentally, *Tufaro* did not involve the statutory provision at issue in this case, namely, § 31-306, which unambiguously delimits the benefits to which the surviving dependent of a deceased employee is entitled. As we have explained, the benefits identified in § 31-306 do not include health insurance.

[15] The plaintiff urges us to apply the doctrine of legislative acquiescence to the decisions of the board that the surviving dependent of a deceased employee is entitled to health insurance benefits. See *Weymouth* v. *Police Dept.*, supra, No. 4550; *Sansone* v. *Enfield*, supra, No. 3885. Under that doctrine, the legislature's failure to amend a statutory provision in response to a definitive interpretation of the provision may be viewed as evidence of legislative agreement with that interpretation. E.g., *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 783, 739 A.2d 238 (1999) ("[t]he legislature is presumed to be aware of the interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation" [internal quotation marks omitted]). Although, normally, the doctrine is applicable when the legislature fails to amend a statute within a reasonable period of time following this court's interpretation of the provision at issue; see, e.g., *State* v. *Peeler*, 271 Conn. 338, 427–28, 857 A.2d 808 (2004) (legislative inaction following this court's interpretation of statute may be viewed as legislative acquiescence in that interpretation), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005); we also have applied the rule of legislative acquiescence to administrative interpretations of statutes. E.g., *Berkley* v. *Gavin*, 253 Conn. 761, 780, 756 A.2d 248 (2000). We decline to do so in the present case, however, for the same reason that we have concluded that the board's interpretation of § 31-306 is not entitled to judicial deference, that is, because that interpretation is of relatively recent vintage and of relatively infrequent application. See footnote 8 of this opinion. Accordingly, we believe that it is too soon to draw any firm conclusion from legislative inaction, especially in view of the possibility that the pendency of this appeal itself may have provided the legislature with a reason to refrain from taking any action in response to the decisions of the board.

inconsistent with the humanitarian purposes of the act. We agree, of course, that the act is remedial in nature and must be construed broadly to that end. We also agree that any ambiguities should be resolved in a manner that furthers, rather than thwarts, the act's remedial purposes. We are not free, however, to create ambiguity when none exists; in other words, we cannot "accomplish a result that is contrary to the intent of the legislature as expressed in the act's plain language."[16] *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 137 n.16, 717 A.2d 747 (1998). As we recently have reiterated, "a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673 (2006); see also *Doe* v. *Stamford*, 241 Conn. 692, 697, 699 A.2d 52 (1997) ("[a]lthough the parties . . . called . . . attention to the public policy implications of [the] case, the issue presented [was], at bottom, a matter of statutory construction"). Thus, no matter how sympathetic or deserving the plaintiff may appear to be, it is the province of the legislature, not this court,

---

[16] Thus, the principle of statutory construction that instructs us to construe the act broadly to achieve its remedial purpose does not guide us in the present case because that principle is applicable only when the statutory language is susceptible of more than one reasonable interpretation or when the text of the statute, although plain and unambiguous, yields absurd or unworkable results. See General Statutes § 1-2z. In the present case, the governing statutory language is neither ambiguous nor leads to an absurd or unworkable result.

to determine whether § 31-306 ought to include health insurance coverage.[17]

The decision of the board is reversed and the case is remanded to the board with direction to reverse the decision of the commissioner.

In this opinion KATZ, VERTEFEUILLE and ZARELLA, Js., concurred.

BORDEN, J., concurring. I agree with the result reached by the majority, and with much of its reasoning. I depart from its analysis only with respect to whether the statutory language at issue is ambiguous.

---

[17] The plaintiff also maintains that construing § 31-306 to deprive her of the right to continued health insurance coverage would place that provision in constitutional jeopardy under the equal protection clause of the fourteenth amendment to the United States constitution. Specifically, she claims that there is no rational justification for denying health insurance benefits to the surviving dependents of deceased employees when the dependents of living employees are entitled to receive the same benefits. "This court has held, in accordance with the federal constitutional framework of analysis, that in areas of social and economic policy that neither proceed along suspect lines nor infringe fundamental constitutional rights, the [e]qual [p]rotection [c]lause is satisfied [as] long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . ." (Citations omitted; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 342, 819 A.2d 803 (2003). Under the act, the weekly compensation payment made to an employee who is unable to work is the same as the weekly compensation payment made to the surviving dependent of the employee upon his death. See General Statutes (Rev. to 1989) §§ 31-306 (a) (2) and 31-307 (a). Thus, we may presume that, before his death, the employee used that payment to support *both* himself *and* his dependent; following the employee's death, the dependent would have that same weekly payment to support *herself only*. In such circumstances, the legislature reasonably could have concluded that the payment received by the surviving dependent—in addition to any life insurance benefits that the dependent may have received in accordance with § 31-284b (a)—is sufficient to meet the dependent's needs.

Contrary to the majority, I would conclude that the interpretation of General Statutes (Rev. to 1989) § 31-306 that was adopted by the workers' compensation review board and offered by the plaintiff, Martha Vincent, on appeal, namely, that an employee is required to provide health insurance coverage to the surviving dependent of a deceased employee, is plausible. Therefore, the statutory language is ambiguous. *Viera* v. *Cohen*, 283 Conn. 412, 421, 927 A.2d 843 (2007) ("[t]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation" [internal quotation marks omitted]); see also *Genesky* v. *East Lyme*, 275 Conn. 246, 278, 881 A.2d 114 (2005) (*Borden, J.*, concurring) ("if the text of the statute at issue, considering its relationship to other statutes, as applied to the facts of the case, would permit more than one likely or plausible meaning, its meaning cannot be said to be 'plain and unambiguous' "). Nonetheless, I would also conclude that, despite this ambiguity, the extratextual source of the meaning of the language on which the plaintiff relies, namely, the statutory scheme's remedial purpose, is not enough to overcome the strong suggestion of the text that, as the majority opinion aptly demonstrates, health benefits are not included in § 31-306. I therefore agree that the decision of the workers' compensation review board should be reversed.