******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MICHAEL PETTIFORD *v.* STATE OF CONNECTICUT
## (AC 39296)

Alvord, Prescott and Pellegrino, Js.

*Syllabus*

The plaintiff P sought to recover damages from the defendant for personal injuries he sustained in connection with an accident in which a vehicle owned by the defendant stuck him while he was crossing a road near an intersection. On the evening of the accident, P had parked his truck on the side of the road to deliver a package to an address on the opposite side of the road. At that time, it was dark and rainy, the road was not well lit and P was wearing dark brown clothing without any reflective markings. There also were no distinct makings on the road indicating a place for pedestrians to cross in the area where P was struck, and the avenue that intersected the subject road did not have sidewalks at that intersection. In his complaint, P alleged that his injuries were caused by the negligence of the defendant's agent, who was driving the vehicle when it struck him. The defendant filed a special defense, asserting that P's alleged injuries were proximately caused by his own negligence. Following a trial, the court rendered judgment in favor of the defendant. In reaching its decision, the court reviewed the statutory (§ 14-297 [2]) definition of crosswalk and determined that P was not in or near an unmarked crosswalk when he was struck, because there was no prolongation of lateral lines of sidewalks at the subject intersection. The court also determined that P, by crossing a poorly lit road without wearing reflective clothing on a dark, rainy night was at least 60 percent contributorily negligent for his injuries, and, therefore, his recovery was precluded pursuant to the applicable statute (§ 52-572h [b]). On appeal to this court, P claimed that he was entitled to a new trial because the trial court's comparative negligence calculus rested on its erroneous determination that an unmarked crosswalk did not exist in the area where he was struck. *Held* that the trial court properly determined that P did not cross the road at an unmarked crosswalk at the time of the accident: contrary to P's contention that the trial court construed the statutory definition of crosswalk too narrowly under the circumstances of this case, the plain language of § 14-297 (2) applied to the undisputed facts indicated that the court properly determined that no unmarked crosswalk existed in the area where P was struck, and even if an unmarked crosswalk had existed, P failed to demonstrate how that fact would have altered the trial court's judgment, as the record was silent as to whether P was in or near the purported unmarked crosswalk when he was struck by the defendant's vehicle, and, therefore, this court lacked any basis from which to determine the degree to which the trial court's allegedly erroneous finding would have affected, if at all, its assignment of comparative negligence; furthermore, because the plaintiff did not fail to establish negligence on the part of the defendant and merely failed to establish that the defendant's negligence exceeded his own, the trial court, pursuant to § 52-572h, should have rendered a judgment on the merits against the plaintiff and in favor of the defendant, rather than dismissed the action.

Argued November 14, 2017—officially released January 16, 2018

*Procedural History*

Action to recover damages for the defendant's alleged negligence, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Alfred J. Jennings, Jr.*, judge trial referee, granted the motion to intervene as a plaintiff filed by United Parcel Service; thereafter, the matter was tried to the court, *Hon. Taggart D. Adams*, judge trial referee; judgment dismissing the action; subsequently, the court, *Hon.*

*Taggart D. Adams*, judge trial referee, denied the named plaintiff's motion to reargue, and the named plaintiff appealed to this court. *Improper form of judgment*; *judgment directed.*

*Brenden P. Leydon*, for the appellant (named plaintiff).

*James E. Coyne*, with whom was *Colleen D. Fries*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. In this action arising out of a motor vehicle collision with a pedestrian, the plaintiff Michael Pettiford appeals, following a trial to the court, from the judgment rendered in favor of the defendant, the state of Connecticut.[1] The court concluded that the plaintiff was "at least" 60 percent contributorily negligent for his injuries and, thus, was barred from recovering damages on the basis of the defendant's negligence in accordance with General Statutes § 52-572h (b).[2] The plaintiff claims on appeal that he is entitled to a new trial because the court's comparative negligence calculus rested on the court's erroneous determination that there was not an unmarked crosswalk at the location where the plaintiff was struck by the defendant's vehicle. The defendant disputes the existence of an unmarked crosswalk and also argues in the alternative that the existence of an unmarked crosswalk, or lack thereof, is legally insignificant because the trial court found that the plaintiff had failed to prove how and where along the roadway he crossed at the time of the accident. We agree with the defendant that the court properly determined that no unmarked crosswalk existed but conclude in the alternative that, even if an unmarked crosswalk existed, the plaintiff failed to demonstrate that he was in or very near that crosswalk at the time he was hit by the defendant's vehicle, and, therefore, we lack any basis from which to determine whether the claimed error undermined the court's judgment. Because the form of the judgment was improper, however, we reverse the judgment of the trial court and remand the case with direction to render judgment in favor of the defendant.

The following facts, as found by the court in its memorandum of decision,[3] and procedural history are relevant to our resolution of the plaintiff's claim. The accident at issue occurred at approximately 6 p.m. on January 7, 2009, in the westbound lane of Rock Spring Road in Stamford, somewhere near its intersection with Treat Avenue and the entrance to 102 Rock Spring Road. Trevor Jones, a state employee, was driving a GMC passenger van that was owned by the defendant when he struck the plaintiff, who was crossing the roadway.

Prior to the accident, Jones had been transporting members of the Wilcox Technical High School girls basketball team home from a practice. He dropped off the last girl at the intersection of Rock Spring Road and Coolidge Avenue before proceeding westward on Rock Spring Road. It was rainy that evening, with limited visibility, and the roadway was not well lit. Although Jones had his headlights and windshield wipers on, the headlights of oncoming vehicles made it difficult at times to observe the roadway. Just prior to hitting the plaintiff with the van, Jones observed a United Parcel Service truck that was parked to his left

on the eastbound side of the road with its lights on or flashing. The van traveled approximately twenty-five or thirty feet further before striking the plaintiff, who was near the double yellow line in the center of the road.[4] Jones did not see the plaintiff until a split second before the accident, having been blinded by oncoming headlights just seconds before. He tried to maneuver the van to the left to avoid the collision but was unsuccessful. The van was travelling at approximately fifteen to twenty miles per hour at the time it hit the plaintiff. The posted speed limit on Rock Springs Road was twenty-five miles per hour.

The right front corner of the van struck the plaintiff in the right hip, and he sustained serious injuries to his head and body. When emergency responders arrived, the plaintiff was lying near the beginning of the driveway leading to 102 Rock Spring Road. A package addressed to that location was found near the plaintiff, suggesting that he had been in the process of making a delivery to that address at the time of the accident. The plaintiff was wearing a dark brown uniform without any reflective markings or devices at the time of the accident. The responding police officer, Jeffrey Boothe, made a nonscale diagram of the accident site, which he included in his official report.

On November 12, 2010, the plaintiff commenced this action against the defendant.[5] The operative amended complaint was filed on October 21, 2015,[6] and contained a single count sounding in negligence. The plaintiff alleged various injuries he sustained as a result of the accident and that those injuries were caused by the negligence of the defendant's agent, Jones, in one or more of the following ways: he failed to keep a reasonable and proper lookout; he operated the van at a greater speed than warranted under the circumstances; he operated the van with inadequate or defective brakes or failed to apply the brakes properly; he failed to keep the van under proper control; failed to maneuver the van around the plaintiff; he operated the van at an unreasonable rate of speed in violation of General Statutes §§ 14-218a or 14-219; he failed to yield the right-of-way to a pedestrian crossing in an unmarked crosswalk in violation of General Statutes § 14-300 (c);[7] he failed to exercise due care to avoid striking a pedestrian in violation of General Statutes § 14-300d; and he failed to sound a horn or other noise emitting device to avoid the collision in violation of § 14-300d.

The defendant filed an answer to the complaint and a special defense. The operative answer was filed on April 26, 2011. The final, operative special defense was filed on October 13, 2015. Although the defendant admitted in its answer that the plaintiff was struck by a van owned by the state and operated by a state employee acting within the scope of his employment, it denied all the various specifications of negligence. Further-

more, by way of special defense, the defendant asserted that any injuries alleged by the plaintiff were proximately caused by his own negligence. In particular, the defendant alleged that the plaintiff was negligent in that he failed to ensure that the roadway was clear of approaching vehicles before crossing and failed to be attentive of his surroundings or to keep a proper lookout. The defendant also alleged that the plaintiff abruptly left the safety of the curbside and walked into the path of a vehicle that was so close to the plaintiff that it constituted an immediate hazard to him in violation of General Statutes § 14-300c (b); he crossed the roadway outside of a crosswalk without yielding the right-of-way to the defendant's vehicle in violation of General Statutes § 14-300b (a); and he failed to walk against traffic on the roadway in violation of § 14-300c (a).[8] Finally, the defendant alleged that the plaintiff's actions amounted to negligent use of a highway in violation of General Statutes § 53-182. The plaintiff filed a reply generally denying the allegations in the special defense.

The case was tried to the court, *Hon. Taggart D. Adams*, judge trial referee, between November 5 and November 13, 2015. The parties submitted simultaneous posttrial briefs on January 29, 2016. On April 8, 2016, the court issued a written memorandum of decision, dismissing the action.[9]

The court began its analysis by rejecting the plaintiff's argument that the defendant's agent had an enhanced duty to avoid the collision because the plaintiff had been in or very near to an "unmarked crosswalk" at the time he was struck by the defendant's van. The court reviewed the statutory definition of "crosswalk" set forth in General Statutes § 14-297 (2), which provides, in relevant part, that crosswalks emanate from "the prolongation or connection of the lateral lines *of sidewalks at intersections* . . . ." (Emphasis added.) It then agreed with the defendant that because Treat Avenue does not have sidewalks at the point where it intersects with Rock Spring Road, "there are no lateral lines of sidewalk on Treat Avenue to prolongate into Rock Spring Road to create an unmarked crosswalk."

The court then turned to a discussion of the various claims of negligence raised by the parties. Importantly, the court commented on the scant evidence pertaining to the plaintiff's actions prior to the accident, stating: "It is not known whether [the plaintiff] crossed at a ninety degree angle or took a longer diagonal crossing from his truck to the delivery address." The court made no specific findings regarding where along Rock Spring Road the plaintiff entered the roadway, the precise path he traveled from his truck before being struck, or whether he was struck in or very near to the plaintiff's proposed unmarked crosswalk.

After reviewing the facts and the applicable law, and considering the arguments of the parties, the court con-

cluded as follows: "[B]oth the plaintiff and the defendant . . . were negligent, and their negligence caused the accident and resulting serious injuries to [the plaintiff]. Under the circumstances on Rock Spring Road on the dark evening of January 7, 2009, the [defendant's] agent Jones had a duty to drive more slowly than he did considering the weather conditions, the darkness and the blinding effect of the headlights of oncoming traffic, and to keep a better lookout of the road ahead. This negligence was a cause of the accident and injuries. On his part, [the plaintiff] had a duty in attempting to cross the road to be more observant of oncoming vehicles, had a statutory and common-law duty not to venture out into a well-traveled roadway where visible approaching motor vehicles had the right-of-way and constituted an immediate hazard to him and particularly not to do so in the dark and rainy conditions without the protection of available reflective clothing that might have provided motor vehicle operators such as Jones the opportunity to observe [the plaintiff] well before the collision. These were acts of negligence that also caused the accident and resulting injuries.

"The court determines [that the plaintiff] was contributorily negligent and was responsible for significantly more than half, at least [60] percent, of all the negligence that caused the accident and his injuries. Based on that finding, Connecticut law, [§ 52–572h (b)], precludes any recovery for the plaintiff."

The plaintiff filed a motion to reargue claiming that the court's finding that the plaintiff had not been wearing available reflective clothing was not supported by the evidence and that the court should reassess its assignment of percentage of liability on that basis. The plaintiff did not challenge the court's finding with respect to the existence of an unmarked crosswalk in its postjudgment motion. The court denied the motion on May 23, 2016. This appeal followed.

The plaintiff's sole claim on appeal is that the court improperly determined that the area where he was struck by the defendant's vehicle was not an unmarked crosswalk. According to the plaintiff, the court, in reaching its conclusion that an unmarked crosswalk did not exist, too narrowly construed the statutory definition of a crosswalk as set forth in § 14-297 (2), unnecessarily fixating on the lack of sidewalks along Treat Avenue. We do not agree. Furthermore, even if we did conclude that an unmarked crosswalk existed, the record does not reflect that the plaintiff was in or very near such crosswalk at the time of impact, and thus he cannot demonstrate that the court's resolution of the crosswalk issue, even if incorrect, amounted to reversible error in this case.

Whether unmarked crosswalks extend across Rock Spring Road at its intersection with Treat Avenue is a conclusion of law that is made on the basis of applying

the facts as they exist to the relevant statutory definition. Ordinarily, we review such mixed questions of law and fact under our plenary standard of review, pursuant to which we must decide whether the court's conclusions are legally and logically correct and supported by the facts in the record. See *Crews* v. *Crews*, 295 Conn. 153, 162–63, 989 A.2d 1060 (2010). Issues of statutory construction also invoke our plenary review. See *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 288, 145 A.3d 408, cert. denied, 323 Conn. 939, 151 A.3d 387 (2016).

In construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [In so doing, we] consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 784–85, 941 A.2d 932 (2008). "[A] court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) Id., 792.

The issue of whether the plaintiff was in or near an unmarked crosswalk was relevant to who had the duty to yield the right-of-way and, thus, to the issue of comparative negligence. Generally, a pedestrian has the duty to yield the right-of-way to vehicles in the roadway unless "within a crosswalk marked as provided in subsection (a) of section 14-300 or *any unmarked crosswalk* or at a location controlled by police officers . . . ." (Emphasis added.) General Statutes § 14-300b. In such instances, the pedestrian has the right-of-way. Thus, if the plaintiff was in or near an unmarked crosswalk when he was struck, Jones arguably had a heightened duty to avoid hitting the plaintiff.

A crosswalk, whether actually marked upon the road's surface or unmarked, is specifically defined by § 14-297 (2) as "that portion of a highway ordinarily included *within the prolongation or connection of the lateral lines of sidewalks at intersections*, or any portion of a highway distinctly indicated, by lines or other markings on the surface, as a crossing for pedestrians, except such prolonged or connecting lines from an alley across a street . . . ." (Emphasis added.) The plaintiff does not argue that the language of the statute is ambiguous, only that it should be interpreted broadly enough

to include the circumstance at issue in the present case. By the statute's plain language, however, a crosswalk is created in only two ways: (1) by connecting at the intersections of two roadways the lateral lines of any sidewalks, which resulting crosswalks could be marked or unmarked, or (2) by specifically marking the surface of the roadway, which presumably could occur anywhere along a roadway, not only at an intersection. The statute also makes clear that an alleyway's intersection with a street does not create a crosswalk.

In the present case, is undisputed that Treat Avenue did not have sidewalks at its intersection with Rock Spring Road. The lack of sidewalks meant there were no "lateral lines of sidewalks" to connect across to the other side of Rock Spring Road. Obviously, there also were no distinct markings on the roadway indicating a place for pedestrians to cross in this area. It would appear that a straightforward application of the statute to the undisputed facts would foreclose any argument that the plaintiff could have been in an unmarked crosswalk at the time of the accident.

The plaintiff nevertheless argues that the concrete curb cutouts leading from the sidewalk along Rock Spring Road onto the road surface at the intersection with Treat Avenue were angled in such a way as to suggest extensions across Rock Spring Road from Treat Avenue. The plaintiff never called a witness at trial to explain the purpose of the concrete cutouts or whether they deviated from other cutouts, nor did he present any other evidence at trial in support of his argument other than pictures of the cutouts. In addition, the plaintiff did not cite any statutory support for his argument or provide the court with relevant case law.

The plaintiff also argues that because an alley ordinarily does not have sidewalks, the exception regarding alleys would be rendered superfluous under the trial court's reading of the statute. "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010). We read the exception, however, as addressing an entirely different issue than crosswalks emanating from sidewalks. The exception clarifies that someone walking down an alley cannot, unlike on a pedestrian sidewalk, proceed across its intersection with a roadway as if an unmarked crosswalk existed at that location.

Viewed in its best light, the plaintiff seems to be making a policy argument, invoking notions of public health and safety, asking us to expand the definition of crosswalk beyond the plain statutory meaning. We conclude that the plaintiff's arguments may be more appropriate for the legislature's consideration. Because we must construe the statute as written and cannot supply additional terms to achieve a particular result;

see *Vincent* v. *New Haven*, supra, 285 Conn. 792; we agree with the trial court's conclusion that there was no unmarked crosswalk from Treat Avenue across Rock Spring Road at the time of the incident at issue. Nevertheless, even if we were to agree with the plaintiff that a crosswalk did exist, this would not result in a reversal of the court's judgment and, in particular, its conclusion that the plaintiff's negligence exceeded that of the defendant and, thus, barred recovery.

Contrary to how the plaintiff has framed his claim, the court never made any finding that identifies with any specificity the plaintiff's location on the roadway at the time he was hit or from which it reasonably can be inferred that he was struck in or very near the area of the road that the plaintiff argues constituted an unmarked crosswalk. The court certainly rejected the plaintiff's argument that unmarked crosswalks extend across Rock Spring Road from either side of Treat Avenue's terminus with Rock Spring Road, an intersection that the court found was close to the accident site. The court found that the plaintiff was struck in the middle of the roadway and made no finding that the impact zone was either in or very near to that portion of the roadway where the plaintiff's proposed unmarked crosswalk existed.

The court found that the plaintiff's truck was parked on the eastbound side of Rock Spring Road. The truck was located some twenty-five to thirty feet eastward of the area of impact, meaning the plaintiff parked it some distance east of the Treat Avenue intersection. The court further indicated that it was "not known" whether the plaintiff "crossed at a ninety degree angle or took a longer diagonal crossing from his truck to the delivery address." We read this as an indication that there was an absence of credible evidence from which the court could determine if the plaintiff had left his truck and walked back along Rock Spring Road to its intersection with Treat Avenue, before turning and attempting to cross Rock Spring Road in the vicinity of what he alleges was an unmark crosswalk, or if he had simply attempted to cross diagonally, walking in the most direct route from his truck's location across to his delivery address at 102 Rock Spring Road. There is no finding indicating whether such a diagonal path would have placed him in or near the alleged unmarked crosswalk.

During his opening argument, the plaintiff's counsel argued that the area of impact was at the intersection of Treat Avenue and Rock Spring Road. Counsel's argument, however, does not constitute evidence. The plaintiff was unable to remember anything from the day of the accident, and testified only as to the extent of his damages, not the location where he was struck. Moreover, the only witnesses that could have testified about whether the impact occurred in the alleged unmarked

crosswalk—the responding officer and the eyewitness to the incident—were never asked any questions about the precise impact area. The deposition of the van's driver, Jones, was entered into evidence but provides no further illumination on that precise issue. Finally, the plaintiff did not present the testimony of an accident reconstruction expert to aid the court in determining the precise impact area.

"In Connecticut, our appellate courts do not presume error on the part of the trial court. . . . Rather, the burden rests with the appellant to demonstrate reversible error." (Citation omitted; internal quotation marks omitted.) *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 145, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014). Because the record is silent as to whether the plaintiff was in or near the purported unmarked crosswalk when he was struck by the defendant's vehicle, we are left to speculate about the degree to which the court's allegedly erroneous finding regarding the existence of an unmarked crosswalk would have affected, if at all, its assignment of the percent of negligence it attributed to the plaintiff. Under the circumstance in this case, the court concluded that the plaintiff's negligent actions in crossing a poorly lit street without wearing reflective clothing on a dark, rainy night—none of which is challenged by the plaintiff on appeal—outweighed the negligence the court assigned to the defendant. Even if the plaintiff was able to demonstrate that an unmarked crosswalk existed, a claim we have rejected, he has failed to show how that fact would have significantly altered the judgment of the trial court in this case.

The form of the judgment is improper, the judgment dismissing the action is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

[1] Pettiford was working for United Parcel Service (UPS) at the time of the incident, and UPS intervened as an additional plaintiff, asserting by intervening complaint that if Pettiford was successful in his action against the defendant, UPS was entitled to recover any workers' compensation benefits that it had paid or would become obligated to pay to him. See General Statutes § 31-293. UPS is not a participating party in the present appeal, however, and, thus, all references to the plaintiff in this opinion are to Pettiford only.

[2] General Statutes § 52–572h (b) provides in relevant part: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person . . . to recover damages resulting from personal injury . . . if the negligence was not greater than the combined negligence of the person . . . against whom recovery is sought . . . ."

[3] Our recitation of the facts is hampered somewhat by the manner in which the trial court set forth its factual findings in its memorandum of decision. Rather than plainly reciting the facts it found on the basis of the evidence presented, the court often refers to the testimony of fact witnesses without expressly indicating the extent to which it credited that testimony. Nevertheless, it is reasonable for us to infer that the court would not recite testimony in its factual recitation that it declined to credit. Furthermore, the parties are in agreement as to most of the salient facts.

[4] Although the plaintiff has no recollection of the accident or other events from that day, the driver of a vehicle traveling eastbound on Rock Spring

Road witnessed the accident.

[5] General Statutes § 52-556 waives the sovereign immunity of the state in cases alleging the negligent operation by a state employee of a motor vehicle "owned and insured by the state against personal injuries or property damage . . . ."

[6] We note that, rather than provide this court with the relevant operative pleadings, the plaintiff included in the appendix of his brief only the original complaint and original answer and special defense. It is the responsibility of the appellant to include in part one of the appendix, inter alia, "all relevant pleadings." Practice Book § 67-8. In a civil matter, the *relevant* pleadings necessarily are the *operative* pleadings.

[7] General Statutes § 14-300 (c) provides in relevant part: "[A]t any crosswalk marked as provided in subsection (a) of this section or any unmarked crosswalk . . . each operator of a vehicle shall grant the right-of-way, and slow or stop such vehicle if necessary to so grant the right-of-way, to any pedestrian crossing the roadway within such crosswalk, provided such pedestrian steps off the curb or into the crosswalk at the entrance to a crosswalk or is within that half of the roadway upon which such operator of a vehicle is traveling, or such pedestrian steps off the curb or into the crosswalk at the entrance to a crosswalk or is crossing the roadway within such crosswalk from that half of the roadway upon which such operator is not traveling. . . ."

[8] General Statutes § 14-300b (a) provides in relevant part: "Each pedestrian crossing a roadway at any point other than within a crosswalk marked as provided in subsection (a) of section 14-300 or any unmarked crosswalk or at a location controlled by police officers shall yield the right of way to each vehicle upon such roadway. . . ."

General Statutes § 14-300c provides in relevant part: "(a) No pedestrian shall walk along and upon a roadway where a sidewalk adjacent to such roadway is provided and the use thereof is practicable. Where a sidewalk is not provided adjacent to a roadway each pedestrian walking along and upon such roadway shall walk only on the shoulder thereof and as far as practicable from the edge of such roadway. Where neither a sidewalk nor a shoulder adjacent to a roadway is provided each pedestrian walking along and upon such roadway shall walk as near as practicable to an outside edge of such roadway and if such roadway carries motor vehicle traffic traveling in opposite directions each pedestrian walking along and upon such roadway shall walk only upon the left side of such roadway.

"(b) No pedestrian shall suddenly leave a curb, sidewalk, crosswalk or any other place of safety adjacent to or upon a roadway and walk or run into the path of a vehicle which is so close to such pedestrian as to constitute an immediate hazard to such pedestrian. . . ."

[9] It appears that the court may have believed that because the plaintiff did not prevail in his negligence action brought pursuant to General Statutes § 52-556, which provides a limited waiver of sovereign immunity in cases alleging the negligent operation of a state owned and insured vehicle by a state employee, this somehow divested the court of subject matter jurisdiction and required a dismissal of the action. That belief, however, was misplaced. Once facts sufficient to support a waiver of sovereign immunity pursuant to § 52-556 have been pleaded and the case has gone to trial, the plaintiff's failure to prevail on the merits does not implicate the court's jurisdiction over the action or its authority to render judgment in favor of the prevailing party. See *In re Jose B.*, 303 Conn. 569, 579, 34 A.3d 975 (2012), citing favorably to *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991) (declining to adopt "bizarre interpretation" of General Statutes § 7-465 that would require courts to conclude it lacked of subject matter jurisdiction over case tried before it solely because plaintiff failed to establish essential element of his cause of action). Moreover, in the present case, the plaintiff did not fail to establish negligence on the part of the defendant; he merely failed to establish that the defendant's negligence exceeded his own. The statutory bar against recovery in § 52-572h applies whenever a plaintiff's negligence is found to exceed 50 percent of the combined negligence of those against whom recovery is sought, and its proper application merely results in a judgment on the merits against the plaintiff and in favor of the defendant, which was the result here. In sum, the form of the judgment in the present case is improper and should be corrected to reflect a judgment in favor of the defendant rather than a dismissal of the action.