******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# MICHELLE WILLIAMS *v.* STATE OF CONNECTICUT
## (AC 40294)

Prescott, Bright and Bishop, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant state of Connecticut for personal injuries she sustained as a result of an accident involving a motor vehicle owned and insured by the defendant. At the time of the accident, an employee of the Department of Transportation, L, was operating a department maintenance truck on the highway as part of a crew performing pothole repair work. The plaintiff was cresting a hill when the vehicle in front of her swerved to avoid colliding with the truck operated by L, who at the time was following another state vehicle that was performing the actual repairs. Thereafter, the plaintiff likewise swerved to avoid the truck operated by L, but instead hit a guardrail, became airborne, and then struck L's truck. The plaintiff claimed that her injuries were caused by the negligence of L and that the defendant was liable pursuant to the statute (§ 52-556) that permits an action against the state for injuries caused by the negligence of any state employee when operating a motor vehicle owned and insured by the state. In her complaint, the plaintiff alleged that L was negligent in a number of ways, including, inter alia, by failing to provide adequate warning signs to alert drivers of the presence of the department trucks on the highway, and failing to follow department rules, procedures and policies for operating the vehicle, diverting traffic and providing warning signs. Subsequently, the defendant filed a special defense asserting that the plaintiff's alleged injuries were proximately caused by her own negligence. Following a trial to the court, the court rendered judgment in favor of the defendant, from which the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on her claim that the trial court, in making its ruling, framed the issue of the case too narrowly and improperly failed to consider all of the instances of L's negligence alleged in the complaint; although the trial court's memorandum of decision focused almost entirely on whether warning signs had been in place at the time of the accident, the record was devoid of anything to support the plaintiff's assertion that the trial court failed to consider the forms of L's negligence alleged in the complaint that were not dependent on the presence of warning signs, as the court's overall conclusion that the plaintiff had failed to satisfy her burden of proving that her injuries were more likely than not caused by L's negligence, which largely was based on its credibility determinations of the witnesses, was not expressly limited to those instances of negligence alleged in the complaint that asserted a lack of warning signs, and reflected the trial court's general determination that the defendant's version of the facts surrounding the accident was more credible than that presented by the plaintiff, and to the extent that the court's memorandum of decision was ambiguous, the plaintiff failed to seek clarification or ask for reargument, and, in the absence of any evidence to the contrary, this court presumed that the trial court disposed of the matter properly.

2. This court declined to review the plaintiff's claim that the trial court improperly failed to consider certain statutes, regulations, and highway safety standards, the plaintiff having failed to preserve the claim for appellate review by raising it before the trial court: contrary to the plaintiff's contention that she had properly preserved this issue by alleging in her complaint that L had failed to follow department rules, policies and procedures, neither the plaintiff's complaint nor her posttrial brief cited to any particular statute or regulation with which L purportedly failed to comply, and although the plaintiff made passing reference to a certain statute (§ 14-298) and state regulation (§ 14-298-800) during a pretrial colloquy with the court, she did not offer any evidence or testimony pertaining to any particular statute or regulation during trial; moreover, although the plaintiff initially had sought, over the defendant's objection, to premark as exhibits certain excerpts of certain highway

safety standards, of which the trial court could not take judicial notice, the trial court deferred ruling on that request, and the plaintiff did not seek to introduce those excerpts into evidence at trial, did not question any witness regarding those standards, and failed to refer to those standards in her posttrial brief.

Argued November 27, 2018—officially released April 9, 2019

*Procedural History*

Action to recover damages for the defendant's alleged negligence, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Elgo, J.*; judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Austin Berescik-Johns*, with whom was *David V. DeRosa*, for the appellant (plaintiff).

*Edward P. Brady*, with whom, on the brief, was *Catherine M. Blair*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The plaintiff, Michelle Williams, appeals, following a bench trial, from the judgment rendered on her complaint in favor of the defendant, the State of Connecticut. In her one count complaint, the plaintiff sought monetary damages for personal injuries she had sustained as a result of the alleged negligence of an employee of the Department of Transportation (department) while operating a state owned vehicle. See General Statutes § 52-556.[1] On appeal, the plaintiff claims that the trial court improperly (1) failed to consider all of the specifications of negligence that she alleged in her complaint and (2) failed to consider applicable statutes and highway safety regulations governing the actions of the department. We disagree with the plaintiff's first claim and conclude that the second claim was not preserved for appellate review. Accordingly, we affirm the judgment of the court.

The following facts found by the court and procedural history are relevant to our resolution of the plaintiff's appeal. "On January 24, 2012, around 10:40 a.m., the plaintiff was driving north on Route 15 near exit 38 [in Norwalk]. As she crested near the top of a hill, following one car length behind the vehicle ahead of her in the left lane, the vehicle before her swerved to avoid colliding with a [department] crash unit maintenance truck driven by [department employee Terrence] Lynch, which was . . . traveling slowly in the . . . left-hand lane. Lynch had been part of a crew of [department] workers who were performing pothole repair work on the highway and was the second of two crash units following the vehicle doing the actual repairs. John McNamara, a witness to the accident, was traveling southbound on the right-hand lane of Route 15 and ascending the crest from the other direction when he saw the collision. He observed [the] plaintiff's car swerve to avoid hitting Lynch's truck, then hit the guardrail and [become] airborne, spinning 180 degrees when it landed and struck Lynch's truck. Trooper Carlo Marandola arrived at the scene and noted damage to the respective vehicles as well as 170 feet of tire marks, which were made by the plaintiff's vehicle."

The plaintiff commenced the underlying negligence action on January 6, 2014. She alleged that she had sustained serious personal injuries, some permanent in nature, as a result of the January 24, 2012 incident, and that the direct and proximate cause of her injuries was the negligence and carelessness of Lynch, who was a state employee operating a motor vehicle owned and insured by the state. The plaintiff alleged that Lynch was negligent in one or more of the following ways:

"a. he made unsafe movements upon the highway incidental to the operation of a state owned motor vehicle;

"b. he caused [the] defendant's vehicle to obstruct moving traffic on the highway making it unsafe for other motorists;

"c. he failed to follow established safety procedures and/or standards for diverting traffic on a highway while operating a state owned motor vehicle;

"d. he failed to take reasonable efforts to warn motorists of the presence of [the] defendant's vehicle in the travel portion of the highway;

"e. he was inattentive and failed to keep a proper lookout for other approaching motor vehicles on the highway;

"f. he unreasonably entered the left bound travel lane from the highway shoulder and/or median grass area where such movement could not be done with reasonable safety;

"g. he failed to follow [department] rules, policy or procedures in that a [department] truck was in the highway without adequate flagman and/or signs to warn of its presence;

"h. he failed to provide adequate signs or warnings to properly alert drivers of the presence of the [department] truck;

"i. he operated the [department] truck at a low rate of speed in the fast travel lane in an area over a hill crest without adequate warning to alert drivers coming over the hill crest creating a hazardous situation;

"j. he failed to keep the [department] truck under proper and reasonable control; and

"k. he positioned the [department] truck in a dangerous location on the highway."

The defendant filed an answer denying all of the allegations of negligence and asserting a special defense of comparative negligence. The plaintiff submitted a reply denying all allegations in the special defense.

The matter was tried to the court, *Elgo, J.*, on August 10, 2016. The court heard testimony from McNamara, Marandola, Lynch, and the plaintiff. After the parties submitted posttrial briefs, the court issued its memorandum of decision finding in favor of the defendant on the plaintiff's complaint.

In its memorandum of decision, the court discussed in detail one primary issue in dispute, namely, whether the department had placed warning signs on the highway and on the maintenance truck operated by Lynch in order to alert oncoming traffic of the road repair. The court credited the testimony of Lynch that warning signs were present. The court also credited photographic evidence showing that Lynch's truck had an illuminated arrow redirecting traffic around the maintenance vehicles. The court did not credit the testimony

of the plaintiff and McNamara that there had been no signs warning of the road maintenance on either the highway or on the defendant's vehicle. The court observed that the accident had occurred on the northbound side of the parkway and that McNamara had been driving on the opposite, southbound side and had exited the parkway prior to where any warning signs would have been posted. The court found that "it was far more likely that McNamara saw the dramatic accident in the seconds it took to pass by it, then got off the highway and called 911 with little ability or occasion to see or identify construction signs meant for northbound traffic." The court further noted the plaintiff's admission that she had been driving one car length behind a sports utility vehicle (SUV) with dark tinted windows, which prevented her from seeing the traffic in front of the SUV, meaning that it was more likely than not that she would have been unable to observe the warning signs.

The court did not individually discuss each of the plaintiff's separate specifications of negligence as set forth in the complaint, but generally concluded that the plaintiff had failed to satisfy her burden of proof. Specifically, the court concluded: "In a civil case, the plaintiff has the burden of proof by a preponderance of the evidence. . . . In order to satisfy her burden, the plaintiff must demonstrate that the defendant was, more likely than not, negligent *in one or more ways alleged in her complaint. . . .* This court, however, cannot find the plaintiff's version of the accident more credible than the defendant's version of the facts. Because this court simply cannot resolve the disputed *issues* in favor of the plaintiff, it enters a verdict in favor of the defendant." (Citations omitted; emphasis added.) This appeal followed.

I

The plaintiff claims that the court too narrowly framed the issue of the case, which resulted in an incomplete ruling that failed to consider all specifications of negligence alleged in the complaint. More specifically, the plaintiff argues that the court's written memorandum of decision focuses almost exclusively on the contested issue regarding whether warning signs were in place at the time of the accident. According to the plaintiff, however, she had alleged other specifications of negligence in her complaint the proof of which were not dependent on the presence of warning signs. The defendant responds that the plain language of the court's decision indicates that it considered all of the plaintiff's claims of negligence and simply concluded that the plaintiff had failed to meet her burden of proof with respect to *all* disputed issues of negligence, not just whether adequate warning signs existed in the vicinity of the crash. On the basis of the record presented, we agree with the defendant.

Whether the court considered and decided all of the plaintiff's specifications of negligence requires us to construe the court's judgment as set forth in its memorandum of decision. "Because [t]he construction of a judgment is a question of law for the court . . . our review . . . is plenary." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 91, 952 A.2d 1 (2008). "As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court *as gathered from all parts of the judgment. . . .* The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Emphasis added; internal quotation marks omitted.) Id., 91–92. "In Connecticut, our appellate courts do not presume error on the part of the trial court. . . . Rather, the burden rests with the appellant to demonstrate reversible error." (Internal quotation marks omitted.) *Pettiford* v. *State*, 179 Conn. App. 246, 260–61, 178 A.3d 1126, cert. denied, 328 Conn. 919, 180 A.3d 964 (2018).

Here, there is nothing in the record before us that supports the plaintiff's assertion that the trial court, in finding in favor of the defendant, failed to consider all of the specifications of negligence alleged in the complaint. Although the plaintiff is correct that the majority of the court's analysis focused on resolving the dispute over whether warning signs were present at the time of the accident, we also must look to the remainder of the court's decision, including the court's overall conclusion.

The court clearly indicated that the plaintiff was entitled to prevail if she demonstrated negligence "in one or more ways alleged in her complaint." This suggests that the court understood its duty to consider all aspects of the plaintiff's negligence claim. The trial court also concluded, largely on the basis of its determination regarding the credibility of the witnesses, that the evidence presented by the plaintiff was insufficient to sustain her burden of convincing the court that her injuries were more likely than not caused by the negligence of the defendant. This court will not revisit credibility determinations on appeal; see *Somers* v. *Chan*, 110 Conn. App. 511, 530, 955 A.2d 667 (2008); nor can we substitute our own conclusion regarding the weight of the evidence for that of the fact finder. See *Kaplan* v. *Kaplan*, 186 Conn. 387, 391, 441 A.2d 629 (1982). The court's overall conclusion that the plaintiff had failed to satisfy her burden of proving negligence on the part of the defendant was in no way expressly limited only to those specifications of negligence that relied on allegations regarding a lack of warning signage. Rather,

the court concluded more generally that it found the defendant's version of the facts surrounding the accident more credible than that presented by the plaintiff. That conclusion reasonably may be viewed as pertaining not only to the allegations of negligence related to the existence of warning signs but also to other specifications of negligence, including that Lynch had been operating his vehicle in an unreasonable fashion or had failed to keep a proper lookout for approaching traffic.

Reading the memorandum of decision as a whole, we simply are not persuaded that the court either too narrowly framed the issues presented by the parties or that it failed to consider all forms of negligence alleged by the plaintiff in her complaint. To the extent that the court's memorandum of decision is ambiguous, the plaintiff failed to seek clarification or ask for reargument, and, in the absence of any evidence to the contrary, we will presume that the court disposed of the matter properly. Because the plaintiff has failed to demonstrate that the court's judgment in favor of the defendant was legally incomplete, we reject the plaintiff's claim.

II

The plaintiff also claims that, in reaching its decision, the court improperly failed to consider applicable statutes, highway safety regulations, and standards governing the actions of the department. Specifically, the plaintiff claims that she "alleged in her complaint, and at trial before the court, that the defendant's actions prior to the . . . collision violated applicable Connecticut statutes, regulations, and safety procedures," and that she "presented evidence at trial to prove this claim." The defendant argues that the safety regulations and statutes relied on by the plaintiff in support of this claim on appeal were never pleaded or offered into evidence at trial and, therefore, this claim is not properly preserved for appellate review. Again, we agree with the defendant.

The following procedural history is relevant to our disposition of this claim. At the start of the trial, the court asked the parties whether there was anything preliminarily that the court needed to address. The plaintiff indicated that "[w]e have some regulations, Your Honor, that we have to talk about." The plaintiff explained: "So [General Statutes §] 14-298, Office of State Traffic Administration statute empowers . . . the Department of Transportation to prepare or to—to adopt regulations. And then there's § 14-298-800 [of the Regulations of Connecticut State Agencies] . . . .[2] [It is] a Manual on Uniform Traffic Control [Devices] [MUTCD], 2009 edition. I have excerpts that I'm going to use from that edition. I brought the whole 2009 edition in with me today if counsel wanted to look at it, but I have excerpts. It deals with a mobile operation on a

multilane road diagram that is one of their standard[s] and then some signs and I just wanted the court to take judicial notice of that." (Footnote added.)

The defendant objected, arguing as follows: "Preliminarily, counsel wants to introduce as a full exhibit, statutes. I think Your Honor—if a statute is relevant, Your Honor . . . has the ability, obviously, to review it and address it as necessary. So I don't think a statute has to be marked as a full exhibit, number one. Secondarily, Your Honor, there are certain regulations that I believe counsel wants to mark as full exhibits. Again, same—my position is the same on that. And, further, the relevancy of certain regulations may or may not come into issue. So until there is a foundation laid for the proper admissibility of a particular regulation, I object to it being premarked as a full exhibit. . . . And then last, Your Honor, as counsel referenced, there are certain exhibits I believe counsel wants to offer from the [MUTCD]. It's an engineering manual that engineers use in, my understanding is, designing and building of roads, highways, et cetera, and I would submit, Your Honor, that all that is not admissible on several grounds. One is no foundation. Number two, there has been no disclosure of any expert witness by the plaintiff in this matter relative to this particular issue, engineering standards, for anything having to do with liability for that matter."

The court agreed with the defendant that it was not necessary for copies of Connecticut statutes and regulations to be marked into evidence, as these may be judicially noticed by the court. See, e.g., General Statutes § 52-163. The court initially indicated that it was inclined to agree with the defendant that the plaintiff needed to lay some foundation for admitting the MUTCD into evidence. The plaintiff responded that she did not believe an expert was necessary but that she had a witness through whom she would seek to admit the MUTCD. The court stated: "All right. Why don't we wait until then? All right? And then we'll find out what kind of foundation you lay and we can take a look at it then."

In support of her claim that the court failed to properly consider applicable statutes, regulations, and the MUTCD, and in responding to the defendant's argument that this claim was not raised to the trial court and thus not properly preserved for appellate review, the plaintiff directs us to paragraphs (c) and (g) of her specifications of negligence. Those paragraphs alleged that Lynch had "failed to follow established safety procedures and/or standards for diverting traffic on a highway while operating a state owned motor vehicle" and "failed to follow [department] rules, policy or procedures in that a [department] truck was in the highway without adequate flagman and/or signs to warn of its presence." On the basis of the record before us, however, we are not convinced that the plaintiff properly preserved for

appellate review her claim that the court improperly failed to consider relevant state statutes, regulations or the MUTCD.

First, with respect to the court's alleged failure to consider relevant statutes, the plaintiff alleged in her complaint that Lynch failed to follow department rules and policies, as well as safety procedures or standards, but she never alleged a violation of any particular state statute. On appeal, the plaintiff identifies General Statutes § 14-298 as the statute that the court failed to consider. That statute, however, was not cited in the complaint or referred to in the plaintiff's posttrial brief. Furthermore, although the plaintiff mentioned § 14-298 in a pretrial colloquy with the court, she did so only to indicate that § 14-298 was the statutory basis for the promulgation of a department regulation adopting the MUTCD.

With respect to highway safety regulations, we first note that none of the specifications of negligence, including those specifically relied on by the plaintiff, alleges a failure to comply with any particular regulation, or even contain the word "regulation." Second, although the plaintiff made brief reference to § 14-298-800 of the Regulations of Connecticut State Agencies in a pretrial colloquy regarding the marking of exhibits, the plaintiff made no further mention of § 14-298-800 or any other regulation in her presentation of evidence. After both sides rested, the court asked the parties whether they would like to submit posttrial briefs. The court indicated that posttrial briefs "might be helpful, especially if you're going to be citing regulations . . . that you might think are relevant." Counsel for the defendant responded: "Well, Your Honor, I have some concern, based upon what you just commented, about the briefs mentioning . . . regulations. There's no regulations that have come into evidence; there's been no regulations mentioned on the record. Clearly, I think counsel can argue statutes because that's been pled. . . . The complaint does not contain any allegations of any violation of any regulations, so I'm just a little concerned . . . in that regard." The plaintiff made no references to any regulations in her posttrial brief.

Finally, as to the MUTCD, although the plaintiff sought the court's permission prior to trial to premark, presumably as full exhibits, excerpts taken from the MUTCD, the defendant objected, arguing that some foundation would need to be laid as to their admissibility, and that an expert witness might be necessary for that purpose given the technical nature of the MUTCD. The court deferred ruling on the admissibility of the MUTCD, indicating it would do so if the plaintiff sought to admit the excerpts at trial. The plaintiff, however, never sought to introduce the MUTCD or excerpts into evidence during trial, nor did she question any witness about the MUTCD. Even if the trial court had taken

judicial notice of § 14-298-800, that regulation only refers to the MUTCD. It does not contain the contents of the manual, of which the court could not take judicial notice. The plaintiff did not refer to the MUTCD in her posttrial brief.

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal. We repeatedly have held that [a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–20, 99 A.3d 1079 (2014).

Having thoroughly reviewed the pleadings, the trial transcript, and the parties' posttrial briefs, we conclude that the plaintiff's claim that the court failed to consider relevant statutes, department regulations, and the MUTCD is not preserved for appellate review because the plaintiff's arguments never properly were raised to or considered by the trial court. There were no references to any particular statute, regulation, or the MUTCD in the plaintiff's complaint. Although the court indicated its willingness to consider the relevance of the MUTCD at the time of trial, the plaintiff never sought to admit the manual or excerpts from it into evidence and did not offer testimony pertaining to any particular statute, regulation or the MUTCD during trial. Furthermore, the plaintiff made no reference to regulations or to the MUTCD in her posttrial brief. We cannot review the court's purported failure to consider arguments that were never properly before it. Accordingly, we decline to entertain the plaintiff's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-556 provides: "Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

[2] Section 14-298-900 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) All temporary traffic control devices used on road or street construction, maintenance work, or for incident management, shall be of the type approved by the Office of the State Traffic Administration and shall be in compliance with the provisions set forth in 23 CFR 655.603.

"(b) Such devices shall conform to the standards set forth in the following publications as applicable, except as provided otherwise in sections 14-298-500 to 14-298-900, inclusive, of the Regulations of Connecticut State Agencies:

"(1) The 2009 edition of the 'Manual on Uniform Traffic Control Devices for Streets and Highways' (MUTCD) approved by the Federal Highway

Administration  . . . ."
                              _____