******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IP MEDIA PRODUCTS, LLC *v.*
SUCCESS, INC., ET AL.
(AC 41242)

DiPentima, C. J., and Prescott and Elgo, Js.

*Syllabus*

The plaintiff brought an action against the defendant I Co. seeking to fore-
close a mortgage on certain real property. Although service was made
on I Co., the allegations in the plaintiff's complaint were asserted against
a different entity, L Co., and not I Co. The note and mortgage had been
signed by C, as the president of L Co. The trial court rendered judgment
in favor of I Co. on the grounds that there were no allegations in the
complaint against I Co., and that the mortgage and note were unenforce-
able against I Co. because it was not the entity that conveyed the
mortgage and signed the note, and because C did not have the authority
to execute those documents on behalf of I Co. On appeal to this court,
the plaintiff claimed that it was a holder in due course entitled to enforce
the mortgage and note, irrespective of whether those documents were
executed with the requisite corporate authority. *Held* that the plaintiff
having failed to raise its holder in due course claim in the trial court,
the claim was not properly preserved for appellate review; the plaintiff
did not challenge the trial court's factual finding that C did not have
the authority to act on behalf of I Co. when he executed the mortgage
and note and, instead, rested its entire argument on the position that
it was a holder in due course, but its complaint made no allegation that
it was seeking to foreclose the mortgage as a holder in due course, nor
did it plead such a claim as a matter in avoidance of the defendant's
special defense that the mortgage and note were executed without
corporate authority, and the plaintiff failed to introduce any evidence
at trial seeking to establish the elements required by the statute (§ 42a-
3-302) that defines a holder in due course, and did not claim in either
its posttrial brief or motion to reargue that it was a holder in due course
entitled to enforce the mortgage and note despite the court's finding
that C lacked the corporate authority to encumber the property on
behalf of I Co.

Argued February 8—officially released July 30, 2019

*Procedural History*

Action to foreclose a mortgage on certain real prop-
erty owned by the named defendant et al., and for other
relief, brought to the Superior Court in the judicial dis-
trict of Fairfield, where the court, *Hon. Michael Hart-
mere*, judge trial referee, rendered judgment in favor
of the defendant JD's Café I, Inc.; thereafter, the court
denied the plaintiff's motion to reargue, and the plaintiff
appealed to this court. *Affirmed*.

*Stephen R. Bellis*, for the appellant (plaintiff).

*Barbara M. Schellenberg*, with whom, on the brief,
was *Vincent M. Marino*, for the appellee (defendant
JD's Café I, Inc.).

*Opinion*

DiPENTIMA, C. J. In this appeal, the plaintiff, IP Media Products, LLC, brought a foreclosure action against the defendant, JD's Café I, Inc.,[1] seeking to enforce a mortgage and note that were conveyed and signed, respectively, by a purportedly different entity, namely, JD's Café I, LLC. On appeal, the plaintiff claims that the trial court improperly concluded that it could not recover against the defendant because (1) the complaint contained no allegations against the defendant; (2) the entity that conveyed the mortgage and signed the note was not the named defendant; and (3) the mortgage and note were executed without the requisite corporate authority. As to the third claim, the plaintiff does not challenge the court's finding of lack of corporate authority, but argues for the first time on appeal that, because it is a holder in due course, this defense does not apply to it. We conclude that because this argument was not preserved, the plaintiff's third claim fails. Moreover, because we affirm the judgment of the trial court on this basis, we need not address the remainder of the plaintiff's claims.[2]

The following undisputed facts and procedural history are relevant to this appeal. On August 25, 2004, Gus Curcio, Jr., acquired all of the corporate stock in the defendant and, at a shareholder meeting on November 11, 2005, became the defendant's president and director. On July 19, 2007, the defendant acquired 3010 Huntington Road, in Stratford (Stratford property), from Curcio Jr.'s mother. The next day, July 20, 2007, Curcio, Jr., as president of Curcio Carting, Inc., executed a promissory note with Dade Realty Company I, LLC (Dade Realty), in the amount of $110,000. The note indicated that it was secured by a lien on trucks owned by Curcio Carting, Inc., and a mortgage on the Stratford property. The note and mortgage were signed by Curcio, Jr., as president of Curcio Carting, Inc., and Robin Cummings as the president of JD's Café I, LLC.

On August 26, 2014, Dade Realty assigned the note to the plaintiff and shortly thereafter, on October 14, 2014, the plaintiff commenced a foreclosure action against the defendant and several other parties. Although service was made on the defendant, the allegations in the complaint are asserted against JD's Café I, LLC, and not the defendant. Nonetheless, in its answer, the defendant admitted the plaintiff's allegation that JD's Café I, LLC, was the record owner of the Stratford property at the time the mortgage was conveyed. The defendant denied that it had conveyed a mortgage to Dade Realty, or that it was indebted to the plaintiff. In the same responsive pleading, the defendant also asserted several special defenses, alleging, inter alia, that the mortgage and note were unenforceable because they were conveyed and signed, respectively, without the requisite corporate authority and, alternatively, that

JD's Café I, LLC, could not convey a mortgage because it was not the record owner of the Stratford property.[3]

At trial, the parties stipulated that the note and mortgage were assigned to the plaintiff and that the debt remained unpaid. Additionally, the parties agreed that Curcio, Jr., was the defendant's sole shareholder on the date the note and mortgage were executed.[4] The plaintiff called Curcio, Jr., and Attorney Donal Collimore to testify. Through the testimony of Curcio, Jr., the plaintiff introduced into evidence several exhibits, including copies of the mortgage and note. Curcio, Jr., testified that he signed both of these documents on behalf of Curcio Carting, Inc., and was under the belief that the loan security was limited to three vehicles owned by Curcio Carting, Inc. It was his recollection that when he signed both documents, neither contained any indication that JD's Café I, LLC, was involved in the transaction.[5] Further, Curcio, Jr., testified that he was unfamiliar with an entity known as JD's Café I, LLC, but assuming that the mortgage and note contained a misnomer, he was familiar with the defendant. Curcio, Jr., stated that, at the time of the transaction, he was the sole shareholder and president of the defendant, and would not have consented to a mortgage being placed on the Stratford property. When asked whether Cummings had any authority to convey a mortgage on the Stratford property, or affiliation with the defendant corporation, Curcio, Jr., responded that Cummings had no authority and any affiliation he purportedly had was the result of "shenanigans" involving Gus Curcio, Sr.[6]

Following the testimony of Curcio, Jr., the plaintiff called Collimore, who had represented both Curcio Carting, Inc., and the defendant with respect to the transaction with Dade Realty. Collimore testified that the note and mortgage documents were prepared by the lender and that he did not notice the misnomer with respect to the defendant's corporate designation on both documents. Through Collimore's testimony, the plaintiff introduced the title insurance policy that was procured for the benefit of Dade Realty. The policy provides that title to the Stratford property is held by the defendant, and not JD's Café I, LLC. With respect to the logistics of the loan transaction, Collimore testified that he obtained signatures from Curcio, Jr., and Cummings separately. He first met with Curcio, Jr., and then met with Cummings on his boat to have him sign on behalf of the defendant. He also testified that Curcio, Jr., was aware that the defendant, through Cummings, was involved in the transaction.

At the close of evidence, the defendant moved for dismissal pursuant to Practice Book § 15-8.[7] The defendant's counsel argued that the evidence revealed that the mortgage and note had been executed without the requisite corporate authority and, therefore, were unenforceable. Counsel also contended that, in the absence

of reformation, the mortgage and note could not be enforced against the defendant because they were signed in the name of JD's Café I, LLC. The court reserved judgment on both issues and requested that the parties file posttrial briefs.

Thereafter, on June 14, 2017, the trial court rendered judgment in favor of the defendant on the basis, inter alia, that there were no allegations in the complaint against the defendant; rather the allegations were asserted against JD's Café I, LLC. Additionally, the court concluded that the mortgage and note were unenforceable against the defendant because it was not the entity that conveyed the mortgage and signed the note, and the plaintiff had failed to plead reformation to correct this discrepancy. Finally, the court determined that the mortgage and note were void and unenforceable against the defendant because Cummings did not have the authority to execute those documents on behalf of the defendant. The court made no determinations of credibility with respect to either the testimony of Curcio, Jr., or Collimore. After the court's decision, the plaintiff filed a motion to reargue that was summarily denied on December 26, 2017. This appeal followed.

In its challenge to the court's conclusion that Cummings was not authorized to convey the mortgage or sign the note on behalf of the defendant, the plaintiff argues only that it is a holder in due course entitled to enforce the mortgage and note irrespective of whether those documents were executed with the requisite corporate authority. Our review of the record reveals that this argument was not raised before the trial court and, therefore, is not properly preserved for appellate review.[8]

Although we do not address the merits of the plaintiff's claim, we briefly set forth the legal principles that support the trial court's conclusion that the mortgage and note were unenforceable against the defendant due to a lack of corporate authorization. It is a well-established principle of our law that a "corporation is only liable for the acts of its president if it is shown that his acts are so related to his duties as president that they may reasonably be held to have been done in the prosecution of the business of the corporation and while he was acting within the scope of his employment." (Internal quotation marks omitted.) *Cohen* v. *Holloways', Inc.*, 158 Conn. 395, 406–407, 260 A.2d 573 (1969). Where the action is outside the scope of the president's employment, the plaintiff must "demonstrate that (1) [the] action was expressly authorized by resolution of the board of directors; or (2) [the] action was impliedly authorized by the board of directors; or (3) [the] action, although not authorized, was subsequently ratified by the board of directors. . . . Whether a corporate officer is authorized to act on behalf of a corporation is a question of fact to be resolved by the

trier." (Citations omitted.) *Czarnecki* v. *Plastics Liqui-dating Co.*, 179 Conn. 261, 268, 425 A.2d 1289 (1979).

Here, the trial court found that Cummings did not have the authority to act on behalf of the corporation when he executed the mortgage and note. The plaintiff makes no challenge to this factual finding and instead rests its entire argument on the position that it is a holder in due course. The plaintiff's complaint makes no allegation, however, that it is seeking to foreclose the mortgage as a holder in due course, nor did the plaintiff plead such a claim as a matter in avoidance of the defendant's special defense that the mortgage and note were executed without corporate authority. Further, the plaintiff failed to introduce any evidence at trial seeking to establish the elements required by General Statutes § 42a-3-302,[9] and did not claim in either its posttrial brief or motion to reargue that it is a holder in due course entitled to enforce the mortgage and note despite the court's finding that Cummings lacked the corporate authority to encumber the Stratford property on behalf of the defendant. See footnote 2 of this opinion. "[T]he party claiming the rights of a holder in due course bears the burden of proving all elements of that classification." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 73, 699 A.2d 101 (1997).

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal. We repeatedly have held that [a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one. . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked." (Internal quotation marks omitted.) *Williams* v. *State*, 189 Conn. App. 172, 185, 206 A.3d 779, cert. denied, 332 Conn. 902, 208 A.3d 281 (2019). Accordingly, in light of the plaintiff's failure to challenge the court's finding that the mortgage and note were unenforceable because they were conveyed and executed, respectively, without the requisite corporate authority, we affirm the judgment for the defendant on this ground.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Success, Inc., Curcio Carting, Inc., Oronoque Road, LLC, Theresa Symers, Gus Curcio, Jr., and the Department of the Treasury, Internal Revenue Service, also were named as defendants in the underlying action. Success, Inc., and Curcio, Jr., appeared and the claims against them subsequently were withdrawn. Curcio Carting, Inc., Oronoque Road, LLC, Symers, and the Department of the Treasury, Internal Revenue Service, did not appear and have not participated in this appeal. Our references to the defendant are to JD's Café I, Inc.

[2] Although the plaintiff raises three claims, its failure to challenge properly

the court's independent basis for rendering judgment in favor of the defendant is dispositive of this appeal. See *Nationstar Mortgage, LLC* v. *Mollo*, 180 Conn. App. 782, 784 n.1, 185 A.3d 643 (2018). We, therefore, do not review the first and second claims as to the allegations in the complaint and whether reformation was required to enforce the mortgage and note against the defendant, respectively.

[3] We note that this latter special defense is contrary to the defendant's admission that JD's Café I, LLC, was the record owner of the parcel at the time the mortgage was conveyed.

[4] With the consent of both parties, the court also took judicial notice of a prior decision from this court, *Success*, *Inc.* v. *Curcio*, 160 Conn. App. 153, 124 A.3d 563, cert. denied, 319 Conn. 952, 125 A.3d 531 (2015), which involved several of the same parties and events in this case.

[5] Later in his testimony, Curcio, Jr., intimated that all references to JD's Café I, LLC, and the mortgage on the Stratford property were added to the documents after he had signed them.

[6] An "Interim Notice of Change of Officer/Director" filed with the secretary of state on July 20, 2007, the same day the loan and mortgage documents were signed, indicated that Cummings had been appointed as president of the defendant corporation. In *Success*, *Inc.* v. *Curcio*, 160 Conn. App. 153, 177, 124 A.3d 563, cert. denied, 319 Conn. 952, 125 A.3d 531 (2015), this court found that the appointment was not valid, however, because the evidence established that Cummings was appointed by Curcio, Sr., who lacked the authority, or apparent authority, to make such an appointment. Id.

[7] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

[8] See footnote 2 of this opinion.

[9] General Statutes § 42a-3-302 provides in relevant part: " '[H]older in due course' means the holder of an instrument if . . . (2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 42a-3-306, and (vi) without notice that any party has a defense or claim in recoupment in section 42a-3-305 (a)."